UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EDWIN H. CROSBY,

                  Plaintiff,

v.                                    **DECISION AND ORDER**
                                                09-CV-277S

UNITED STATES OF AMERICA,

                  Defendant.

## I. INTRODUCTION

Plaintiff Edwin H. Crosby brings this action against Defendant United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, asserting 11 distinct claims arising out of medical care and treatment he received from the U.S. Department of Veteran's Affairs. Defendant moves for dismissal of ten of Plaintiff's claims, alleging that this Court lacks subject-matter jurisdiction over them. In response, Plaintiff moves to strike Defendant's Motion to Dismiss and for Summary Judgment in his own favor. For the following reasons, Plaintiff's motions are denied and Defendant's Motion to Dismiss is granted.

## II. BACKGROUND

**A.    Plaintiff's Complaint**

Plaintiff Edwin H. Crosby is a veteran of the United States Air Force who has received medical treatment from the Department of Veterans Affairs ("VA") at several locations across the country. (Compl., Docket No. 1, ¶ 5). Plaintiff alleges that beginning in the late 1970's, he has been wholly reliant on the VA for his medical care. (Compl., ¶ 5). He alleges that, beginning with a hernia operation in October 1987, and then from 1993

1

to February 2007, he was the victim of negligence and malpractice by the VA. (Compl., ¶¶ 6-19).

In October 1997, Plaintiff underwent a hernia repair operation during which a granulomata was also removed from his abdomen. (Compl., ¶ 6). Plaintiff alleges that his left ureter was displaced during the operation. (Compl., ¶ 6). The consequences of this displacement, Plaintiff was told, would be the loss of his left kidney and an operation every few years to eliminate scar tissue accumulated in his abdomen. (Compl., ¶ 6).

Plaintiff's first three claims arise from this surgery. He first alleges that he suffered intense pain on his left side from the displaced ureter for five years following his surgery ("Claim 1"). (Compl. ¶ 7). Plaintiff's second claim is that the VA failed to detect that he had kidney stones, which may also have been the cause of his left-side pain ("Claim 2"). (Compl., ¶¶ 7, 8). Plaintiff's third claim, which appears related to his second, is that the VA failed to diagnose the cause of his hypertension, which it had diagnosed and treated with medication ("Claim 3"). (Compl., ¶ 8).

Plaintiff's fourth claim appears to be that medicine he received from the VA in Syracuse, NY, to treat his blood pressure was improperly prescribed because in July 1999, a doctor in the Mt. Vernon, MO, VA clinic changed his medication and told him to discard his old medicine ("Claim 4"). (Compl., ¶ 9). Plaintiff's fifth claim is that his treating doctor at the St. Louis, MO, VA Medical Center failed to conduct testing in or about March 2000, despite Plaintiff providing his medical history and complaints ("Claim 5"). (Compl., ¶ 10).

Plaintiff's sixth claim involves treatment he received in July 2001 at the Fort Harrison, MT, VA Medical Center, where he received a CT scan for the first time. (Compl., ¶ 11). Plaintiff alleges that the CT scan revealed that he had cysts or tumors on his left

kidney and/or adrenal gland, as well as a tumor in his large intestine. (Compl., ¶ 11). A colonoscopy followed and revealed the tumor as well as polyps. (Compl., ¶ 11). Although doctors recommended surgery for the left kidney, they determined that surgery to remove the intestinal tumor was more urgent, so they delayed surgery on Plaintiff's left kidney ("Claim 6"). (Compl., ¶ 11).

Plaintiff's seventh claim is that the VA withheld photographs taken during his colonoscopy, which he requested through the Freedom of Information Act. (Compl., ¶ 12). Plaintiff maintains that the report that the VA produced in response to his request lacked photographs, with an explanation that the camera had not been functioning during the colonoscopy. (Compl., ¶ 12, Ex. D). Yet, according to Plaintiff, the doctor who performed the surgery on his intestinal tumor in May 2003 showed him photographs from the colonoscopy. (Compl., ¶ 12). Plaintiff alleges that the report's lack of photos was the result of spoliation of the medical record, or a negligent failure to include the photographs ("Claim 7"). (Compl., ¶ 12).

Plaintiff's eighth claim stems from his post-surgical care. In July 2003, Plaintiff allegedly noticed a bulge in the area of the May 2003 surgery. (Compl., ¶ 14). Plaintiff told a nurse at the VA clinic in Billings, MT, about the bulge, and she indicated it was fluid buildup from the surgery. (Compl., ¶ 14). According to Plaintiff, however, the bulge was not a buildup of fluid, but an incisional hernia at the surgical site ("Claim 8"). (Compl., ¶ 14).

In October 2003, Plaintiff began seeking treatment at the VA Medical Center in Roseburg, OR. (Compl., ¶ 15). A little more than a year later, Plaintiff was diagnosed with diabetes. (Compl., ¶ 15). Plaintiff's ninth claim is that Agent Orange as well as malpractice

3

by the VA caused his diabetes ("Claim 9"). (Compl., ¶ 15).

In March 2004, Plaintiff underwent surgery to repair the incisional hernia that resulted from the May 2003 surgery. (Compl., ¶ 15). Plaintiff's tenth claim is that he again developed incisional herniation post-surgery ("Claim 10"). (Compl., ¶ 15).

Plaintiff's eleventh claim involves treatment he received at the VA clinic in Batavia, NY. On January 14, 2007, Plaintiff was admitted to Lakeside Health System in Brockport, NY, with a blood pressure reading of 210/120. (Compl., ¶ 18). According to Plaintiff, the cause of this high blood pressure and subsequent hospitalization was medication prescribed to him by medical personnel at the VA Clinic in Batavia, NY ("Claim 11"). (Compl., ¶ 18).

**B.    Plaintiff's Administrative Claims and Previous Litigation**

Plaintiff did not file an administrative claim with the VA regarding Claim 1. For Claims 7-9, Plaintiff filed an administrative claim with the VA, dated April 1, 2004. (Schwartz Decl., Ex. A). The VA denied this claim on March 1, 2006. (Schwartz Decl., Ex. C). Plaintiff filed another administrative claim with the VA on February 1, 2007, which included Claims 7-9 again, as well as claims 2-6, 10, and 11. (Compl., Ex. A). The VA denied the claim on September 29, 2008. (Compl., Ex. C).

On September 11, 2006, Plaintiff filed suit against the United States in the Northern District of New York, seeking redress for the allegations that form the basis of Claim 9 in this case. (Roach Decl., Ex. D; Compl., ¶ 15). The Northern District transferred the case to this Court, and on May 4, 2009, the Honorable Richard J. Arcara granted the government's motion to dismiss. (Roach Decl., Ex. H). Judge Arcara denied Plaintiff's

Motion for Reconsideration on August 11, 2009. (Roach Decl., Ex. I).

Plaintiff commenced the instant case on March 27, 2009. Defendant filed its Motion to Dismiss on July 10, 2009.[1] After full briefing, this Court took the motion under advisement on August 28, 2009, without oral argument.

## III. DISCUSSION AND ANALYSIS

**A.     Timeliness of Defendant's Motion to Dismiss**

Plaintiff moves to strike Defendant's Motion to Dismiss on the basis that it is untimely. Defendant responds that the Motion to Dismiss is timely because Plaintiff, via the U.S. Marshals Service,[2] failed to properly serve it. This Court agrees.

Rule 4(I) of the Federal Rules of Civil Procedure governs service on the United States. That rule requires the following:

> (I) Serving the United States and Its Agencies, Corporations, Officers, or Employees.
>
> (1) United States. To serve the United States, a party must:
>
> (A)(I) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought--or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk--or
>
> (ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;
>
> (B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and

---

[1] The filings relevant to Defendant's motion are docket numbers 5-10, 13, 15, and 16.

[2] Plaintiff was granted *in forma pauperis* status and thus allowed to have service performed on Defendant via the U.S. Marshals Service. (Order granting Motion for Leave to Proceed *in forma pauperis*, Docket No. 3).

5

> (C) if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

Plaintiff, through the U.S. Marshals Service, attempted to elicit a waiver of service from the United States pursuant to Rule 4(d) by directing a Statement of Service to the U.S. Attorney, apparently believing that the United States was subject to service under Rule 4(e)(1) and New York Civil Practice Law and Rules ("NY CPLR") § 312-a. Those rules address service on individuals or entities, not service upon the United States. Because the United States cannot properly be served under Rule 4(e)(1), Rule 4(d) does not permit the use of waiver of service. Northrup v. United States, No. 3:07-cv-20, 2008 WL 4681640 (D. Conn. 2008) (quoting Fed. R. Civ. P. 4(d) Advisory Committee Note on 1993 Amendment) ("The request for waiver of service may be sent only to defendants subject to service under subdivision (e), (f), or (h) [of Rule 4].").

Because Plaintiff failed to properly serve the United States with the complaint, the 60 days afforded the United States under Rule 12(a)(2) to answer or otherwise move against the complaint never began to run. As such, Plaintiff's Motion to Strike Defendant's Motion to Dismiss and for Summary Judgment will be denied.

**B.     Rule 12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction**

Accepting the allegations in Plaintiff's complaint as true, this Court finds that all but one of his claims fall outside the statute of limitations applicable to FTCA actions and as such, this Court lacks subject-matter jurisdiction over them.

A case is properly dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) when a court lacks the statutory or constitutional authority to adjudicate it. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The burden of proving

subject-matter jurisdiction falls to the Plaintiff and must be established by a preponderance of the evidence. Id.

Although the United States enjoys the privilege of sovereign immunity, the FTCA provides a limited waiver of that sovereign immunity. The United States may be held liable when employees acting within the scope of their employment are negligent in "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

The statute of limitations provisions included in the FTCA are a condition of this limited waiver of immunity. 28 U.S.C. § 2401(b); United States v. Kubrick, 444 U.S. 111, 117-118, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). Specifically, these provisions require that any claim be "presented in writing to the appropriate Federal agency within two years after such claim accrues," and that the claimant must file suit within six months of administrative denial of the claim. 28 U.S.C. § 2401(b). When either of these requirements is not met, a district court lacks subject-matter jurisdiction over the claim. Johnson v. Smithsonian Inst., 189 F.3d 180, 189 (2d Cir. 1999).

The plaintiff bears the burden of establishing that his claim is timely under the FTCA. Id. A claim accrues at the time the plaintiff is injured. Kubrick, 444 U.S. at 120. A medical malpractice claim under the FTCA accrues when a plaintiff knows or should have known of the existence of an injury and its cause. Id.

Here, Claims 1-6, and Claim 10 fail the first provision of 28 U.S.C. § 2401(b), in that they were not submitted in writing to the appropriate federal agency within two years of each claim accruing. Plaintiff never submitted an administrative claim for Claim 1. For

Claims 2-6 and 10, he submitted an administrative claim to the VA on February 1, 2007. But the most recent claim of these claims — Claim 10 — accrued in September 2004, when Plaintiff discovered that the second surgery had also herniated. (Compl., ¶ 15.) Plaintiff's February 1, 2007 administrative claim was therefore filed five months too late. Claims 2-6 all accrued before Claim 10 are therefore likewise untimely. Because Plaintiff failed to file timely administrative claims, this Court lacks subject-matter jurisdiction over Claims 1-6 and 10 and they will therefore be dismissed. Johnson, 189 F.3d at 189.

Claims 7-9 meet the first provision of 28 U.S.C. § 2401(b) in that they were presented in writing to the appropriate federal agency within two years of accrual. But these claims nonetheless must be dismissed because Plaintiff failed to file this action within six months "of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). The denial of Plaintiff's administrative claims is dated March 1, 2006 (Schwartz Decl., Ex. C), yet Plaintiff did not file the instant complaint until March 27, 2009, more than three years later. As such, this Court also lacks subject-matter jurisdiction over Claims 7-9.

Plaintiff argues that none of his claims are barred by the statute of limitations because his claims are subject to the continuous treatment doctrine. Under this doctrine, "the statute of limitations may be tolled where plaintiff is under the continuous care of the same doctor or hospital during the course of treatment." Schunk v. United States, 783 F. Supp. 72, 82 (E.D.N.Y. 1992). Where the treatment is not continuous by the same doctor (or associate) or the same hospital for the required period, the continuous treatment doctrine is inapplicable. Camire v. United States, 535 F.2d 749, 750 (2d Cir. 1976). Moreover, the argument that a patient "continued to receive treatment at facilities owned

8

and operated by the government has been consistently rejected where a patient receives improper care from one government physician and is thereafter treated by others not accused of that malpractice." Dundon v. United States, 559 F.Supp. 469, 473 (E.D.N.Y. 1983).

Here, there is no question that Plaintiff alleges that different doctors in different VA facilities in several different states across the country caused him harm. The continuous treatment doctrine therefore does not apply to save Plaintiff's untimely claims. Claims 1-10 will therefore be dismissed. Defendant has not moved to dismiss Claim 11, which is timely.

## IV. CONCLUSION

Because service of Plaintiff's complaint was improper, Defendant's Motion to Dismiss is timely and Plaintiff's Motion to strike Defendant's Motion to Dismiss and Motion for Summary Judgment are therefore denied. Further, because this Court lacks subject-matter jurisdiction over Claims 1-10, Defendant's Motion to Dismiss is granted.

## VI. ORDERS

IT HEREBY IS ORDERED, that Plaintiff's Motion to Strike Defendant's Motion to Dismiss and for Summary Judgment (Docket No. 13) is DENIED.

FURTHER, that Defendant's Motion to Dismiss (Docket No. 5) is GRANTED. Claims 1-10 are DISMISSED.

SO ORDERED.

Dated: August 25, 2010
   Buffalo, New York

                       s/William M. Skretny
                       WILLIAM M. SKRETNY
                          Chief Judge
                       United States District Court